CITY OF JORDAN, petitioner, Respondent,

v.

The CHURCH OF ST. JOHN the BAPTIST OF JORDAN, a Minnesota religious corporation, Appellant,

Premier Bank, mortgagee, Lower Court Respondent.

No. A08–0999.

Court of Appeals of Minnesota.

April 14, 2009.

---

2. U.S. Const. amend. VI; Minn. Const. art. I, § 6.

Annette M. Margarit, Jessica L. Sanborn, Severson, Sheldon, Dougherty & Molenda, P.A., Apple Valley, MN, for respondent City of Jordan.

Larry D. Martin, Dennis T. Olson II, L.D. Martin & Associates, Ltd., Chaska, MN, for appellant.

Considered and decided by LARKIN, Presiding Judge; WORKE, Judge; and STAUBER, Judge.

## OPINION

WORKE, Judge.

In this eminent-domain dispute involving land owned by appellant-church, the church argues that the district court's grant of the city's petition to acquire an easement over certain land for sidewalk and traffic signal purposes violates Minn. Stat. § 315.42 (2008), which precludes placing "roads or streets" over land owned by religious corporations without the consent of the corporation's governing board. We reverse.

## FACTS

In the city of Jordan, Minnesota, Highway 21 runs approximately north-south and intersects Highway 282, which runs approximately east-west. The church owns land north of Highway 282 on each side of Highway 21. The city intends to alter the intersection of the two highways and its plan to do so requires the relocation of a sidewalk and the relocation and upgrading of traffic signal lights. These relocations require the city to place part of the new sidewalk and the new signal lights on the church's land. The parties were unable to reach an agreement that would allow the city to do so. The city's amended condemnation petition sought to acquire easements over two triangles of church land, one 50 square feet in the north-east quadrant of the intersection and the other 32 square feet in the north-west quadrant of the intersection. The church opposed the condemnation, arguing that Minn.Stat. § 315.42 (2008) exempts its land from use for road and street purposes without the consent of its governing board, and precludes location of sidewalks and signal

lights on its property without the consent of its governing board.

The parties stipulated to the facts. The stipulation states both that the city could alter the intersection by adjusting the intersection south—away from the church's land, and that if that were to occur, the city would need easements from the owners of the land south of Highway 282. The district court noted that the church "waived the issues of public purpose and necessity" for the proposed taking, ruled that sidewalks and signal lights were not roads or streets, and granted the city's condemnation petition. The church appeals.

**ISSUE**

Does Minn.Stat. § 315.42 (2008) prohibit the city from condemning easements for sidewalk and signal light purposes?

**ANALYSIS**

■ Under Minn.Stat. § 315.42 (2008), "[n]o roads or streets shall be laid through [the property of a religious corporation] without the consent of the corporation's governing board." This aspect of the statute, which has never been construed by an appellate court of this state, came into existence in 1881 and, but for renumbering, has remained essentially unchanged since its enactment. *Compare* Minn.Stat. § 315.42 (2008) *with* 1881 Minn. Laws ch. 138, § 10 (recodified at Minn. Gen.Stat. 1894 § 2949) (stating that "no streets or roads shall be opened through the lands of [a religious corporation or society], except by and with the consent of the board of directors or trustees of the same").

■ In applying the current statute to the stipulated facts, the district court stated:

[N]o part of the easement request by [the city] in this matter over the proper-

ty owned by the Church will be used specifically for a street or roadway, and [the city] is not prohibited by Minn.Stat. § 315.42 [ (2008) ] from initiating and perfecting a taking for the stated purpose of installing or improving the sidewalk area and installing or improving new signal lights affixed to the sidewalk area.

Appellate review of a district court's construction of a statute, as well as of a statute's application to undisputed facts, is de novo. *Becker v. Mayo Found.*, 737 N.W.2d 200, 207 (Minn.2007) (statutory construction); *In re Welfare of Child of: T.T.B. & G.W.*, 724 N.W.2d 300, 307 (Minn. 2006) (application of a statute to undisputed facts).

■ When construing statutes, "[if] a statute's language is plain and unambiguous, [appellate courts] engage in no further construction. A statute is ambiguous when the language is subject to more than one reasonable interpretation." *In re Stadsvold*, 754 N.W.2d 323, 328 (Minn. 2008) (citations and quotation marks omitted). "[W]ords and phrases [in a statute] are construed according to rules of grammar and according to their common and approved usage; but technical words and phrases and such others as have acquired a special meaning, or are defined in [chapter 645], are construed according to such special meaning or their definition[.]" Minn.Stat. § 645.08(1) (2008).

The statute prohibits "roads or streets" from being "laid through" a church's property without the consent of the church's governing board. Minn.Stat. § 315.42. The district court, assuming that "road" and "street" are not technical words and had acquired no special meaning, stated that "[a] road or street would commonly be known as that area which handles vehicular traffic, and a sidewalk would commonly be known as that area that handles non-

vehicular traffic." The district court's assumption that "road" and "street" are not technical words and had not acquired special meaning is consistent with the fact that neither word is defined in either Chapter 315 or Chapter 645.

Much of the church's argument is based on the assumption that the definitions in Chapter 169 apply to Minn.Stat. § 315.42. Under those definitions, " '[s]treet or highway' means the entire width between boundary lines of any way or place when any part thereof is open to the use of the public, as a matter of right, for the purposes of vehicular traffic." Minn.Stat. § 169.011, subd. 81 (2008). A "sidewalk" is "that portion of a street between the curb lines, or the lateral lines of a roadway, and the adjacent property lines intended for the use of pedestrians." Minn. Stat. § 169.011, subd. 75 (2008). And the relevant part of the definition of "roadway" is "that portion of a highway improved, designed, or ordinarily used for vehicular travel, exclusive of the sidewalk or shoulder." Minn.Stat. § 169.011, subd. 68 (2008). The church, applying the technical definitions of Chapter 169, asserts that a sidewalk is a part or subset of a street and therefore the prohibition in Minn.Stat. § 315.42 on taking church lands for street purposes precludes taking church lands for sidewalk purposes.

By basing its argument on the technical definitions of Chapter 169, the church's argument assumes that Minn.Stat. § 315.42 uses "road" and "street" in a technical sense, despite the fact that, generally, words in statutes are read in their general sense. Minn.Stat. § 645.08(1). The church's argument also assumes that Chapter 169, which addresses traffic regulations, and its definitional sections, both of which have their origins in enactments of 1937, should be used to construe the meaning of a statute enacted over 50 years

earlier in 1881, when vehicular traffic was qualitatively different than after the advent of the automobile. *See* 1937 Minn. Laws ch. 464, § 1 (codified at Mason's Minn.Stat.1927 (Supp.1938) § 2720-151(28)).

Eleven years after what is now codified at Minn.Stat. § 315.42 was enacted, the supreme court, in a case involving a city's liability for an injury occurring on private land that had been treated by the public as a public sidewalk, stated:

> This word "sidewalk," as used in this country, does not mean a walk or way constructed of any particular kind of material, or in any special manner, but ordinarily it is used for the purpose of designating *that part of the street* of a municipality which has been set apart and is used for pedestrians, as distinguished from that portion set apart and used for animals and vehicles.

*Graham v. City of Albert Lea,* 48 Minn. 201, 205, 50 N.W. 1108, 1109 (1892) (emphasis added). Thus, almost contemporaneously with the enactment of what became Minn.Stat. § 315.42, the supreme court stated that "sidewalk" was "ordinarily" understood to refer to part of a street. And this ordinary understanding of "sidewalk," as that term was used in 1892, is consistent with the definition of "sidewalk" currently set out in Minn.Stat. § 169.011, subd. 75. Therefore, despite the fact that the substance of this case involves Minn. Stat. § 315.42 rather than Chapter 169, use of the provision in Chapter 169 defining "sidewalk" would not be inappropriate here. Indeed, the supreme court's understanding of the "ordinar[y]" meaning of "sidewalk" as of 1892 and the definition set out in Chapter 169 are both consistent with the current general understanding of a "street" to include a sidewalk. *See* 64 C.J.S. *Municipal Corporations* § 1422 (1999) (stating "[t]he word 'street,' as ordi-

narily used, includes a sidewalk, although it is sometimes used in its restricted sense as including only the roadway").

Under this analysis, whether "street" is defined generally under caselaw or technically under Chapter 169, the same result is reached: a sidewalk is part of a street. And because a religious corporation's land cannot be taken for street purposes without consent of the corporation's governing board, the church's land cannot be taken for sidewalk purposes without its consent. This conclusion is consistent with an observation by the supreme court, made the same year that the predecessor of Minn. Stat. § 315.42 was enacted:

> [T]he primary and fundamental purpose of a public highway, *street*, or alley is to accommodate the public travel; to afford citizens and strangers an opportunity to pass and repass, *on foot or in vehicles*, with such movable property as they may have occasion to transport; and every man has the right to use upon the road a conveyance of his own at will, subject to such proper regulations as may be prescribed by authority.

*Carli v. Stillwater St. Ry. & Transfer Co.*, 28 Minn. 373, 376, 10 N.W. 205, 206 (1881) (emphasis added).

We would reach the same conclusion if the statute is deemed ambiguous. When confronted with an ambiguous statute, a court may consider "other laws upon the same or similar subjects[.]" Minn.Stat. § 645.16(5) (2008). As noted by the parties, Minn.Stat. § 306.14 (2008), which addresses use of land owned by cemetery associations, includes language similar to that in Minn.Stat. § 315.42. The cemetery statute states: "No road or street shall be laid through the cemetery, or any part of the lands of the association without the consent of the trustees." Construing a prior version of the cemetery statute, the supreme court stated:

> The policy of the state has always been to protect public cemeteries against encroachment. They are corporations of a public character, with a sacred trust. Exemption from the burdens of taxation, assessments, and having roads or streets cut through their lands is not to aid the associations or their trustees, but is to preserve cemeteries for the particular uses to which they have been appropriated, and to guard against the disturbance of the resting places of the dead. The law should be construed liberally.

*State v. Dist. Court of Ramsey County*, 114 Minn. 287, 290–91, 131 N.W. 327, 328 (1911). Caselaw construing the cemetery statute is not dispositive regarding construction of the church statute, but to construe the church statute more narrowly than the cemetery statute would be counterintuitive because it would mean that the cemetery statute is entitled to liberal construction while the similarly worded church statute is not, or that churches lack the "sacred trust" explicitly recognized in the cemetery context. Without a firm basis for doing so, we decline to issue either type of ruling.

Thus, caselaw contemporaneous with the language at issue in the church statute states that a "street" was then understood to include a sidewalk, current statutes suggest the same thing, and the supreme court has indicated that the similarly worded cemetery statute is to be "construed liberally." Under these circumstances, we would resolve any ambiguity in whether Minn.Stat. § 315.42 precludes the taking of the land of a religious corporation for sidewalk purposes in favor of prohibiting the taking without consent of the corporation's governing board.

■ Regarding signal lights, the Commissioner of Transportation

*shall* place and maintain such traffic-control devices ... *upon* all state trunk highways as the commissioner shall deem necessary to indicate and to carry out the provisions of this chapter or to regulate, warn, or guide traffic.... The commissioner may construct and maintain other directional signs *upon* the trunk highways and such signs shall be uniform.

Minn.Stat. § 169.06, subd. 2 (2008) (emphasis added). Similarly,

[l]ocal authorities in their respective jurisdictions *shall* place and maintain such traffic-control devices *upon* highways under their jurisdiction as they may deem necessary to indicate and to carry out the provisions of this chapter or local traffic ordinances, or to regulate, warn, or guide traffic.

Minn.Stat. § 169.06, subd. 3 (2008) (emphasis added). " 'Shall' is mandatory." Minn.Stat. § 645.44, subd. 16 (2008). Therefore, the commissioner and local authorities are each required to locate necessary traffic-control devices "upon" the highway. It is undisputed that the intersection in question is that of two highways. Further, the definitions of "street" and "highway" are identical under Chapter 169, and have been since 1937. *See* Minn. Stat. § 169.011, subd. 81 (defining a " '[s]treet or highway' " as "the entire width between boundary lines of any way or place when any part thereof is open to the use of the public, as a matter of right, for the purposes of vehicular traffic"); 1937 Minn. Laws ch. 464, § 1 (codified at Mason's Minn.Stat.1927 § 2720-151(28) (Supp.1938)) (defining " '[s]treet' or highway' " similarly). And *Carli* suggests that "streets" and "highways" were sufficiently similar in 1881 to allow those terms to be interchangeable for purposes of this appeal. *See Carli,* 28 Minn. at 376, 10 N.W. at 206 (stating that "the primary and fun-

damental purpose of a public *highway, street,* or alley is to accommodate the public travel ... *on foot or in vehicles* ... subject to such proper regulations as may be prescribed by authority"). Thus, traffic control devices are to be placed "upon" a highway, a "highway" is a "street," and there is a prohibition on taking the property of a religious corporation for street purposes without the consent of the corporation's governing board. Therefore, we conclude that the church's property cannot be taken for signal light purposes without the consent of the church's governing board.

## DECISION

For purposes of Minn.Stat. § 315.42 (2008), sidewalks are part of streets. Also, because a city is to place traffic-control devices on a highway or street, the prohibition in Minn.Stat. § 315.42 (2008) on using the land of religious corporations for road or street purposes without the consent of the corporation's governing board precludes the use of the church's land for sidewalk and signal light purposes without consent of the church's governing board. Because the district court read Minn.Stat. § 315.42 (2008) to allow the taking of an easement over the church's land for sidewalk and signal light purposes without consent of the church's governing board, we reverse.

**Reversed.**