CITY OF YONKERS, Respondent, v. RENTWAYS, INC., Defendant, and DEVONSHIRE LANE SERVICE, INC., et al., Appellants.

Argued October 20, 1952; decided December 5, 1952.

*Eugene L. Bondy* and *Bertram Braufman* for appellants. I. The construction placed upon the building zone ordinance by the judgment appealed from renders that ordinance *pro tanto* unconstitutional. (*Matter of Barker* v. *Switzer,* 209 App. Div. 151, 238 N. Y. 624; *Matter of Monument Garage Corp.* v. *Levy,* 266 N. Y. 339; *Matter of 440 E. 102nd St. Corp.* v. *Murdock,* 285 N. Y. 298; *Village of Stamford* v. *Fisher,* 140 N. Y. 187; *Dunkirk Aerie, Order of Eagles* v. *City of Dunkirk,* 274 App. Div. 685; *Matter of Kensington-Davis Corp.* v. *Schwab,* 239 N. Y. 54; *Welch* v. *City of Niagara Falls,* 210 App. Div. 170; *City of Albany* v. *Anthony,* 262 App. Div. 401; *Baddour* v. *City of Long Beach,* 279 N. Y. 167, 308 U. S. 503.) II. For the purpose of considering its constitutionality, the zoning ordinance must be deemed to have the meaning which the courts below attributed to it. (*Fidelity Trust Co.* v. *Field,* 311 U. S. 169; *Matter of Bommer,* 159 Misc. 511.) III. The building ordinance, as construed by the court below, is unconstitutional since it confiscates valuable property rights without warrant. (*Nectow* v. *Cambridge,* 277 U. S. 183; *Matter of Monument Garage Corp.* v. *Levy,* 266 N. Y. 339; *Matter of 440 E. 102nd St. Corp.* v. *Murdock,* 285 N. Y. 298; *Koch* v. *City of Toledo,* 37 F. 2d 336; *Seattle Trust Co.* v. *Roberge,* 278 U. S. 116; *People* v. *Miller,* 304 N. Y. 105; *Matter of Eaton* v. *Sweeny,* 257 N. Y. 176; *People* v. *Gillson,* 109 N. Y. 389; *Penna. Coal Co.* v. *Mahon,* 260 U. S. 393.)

*J. Raymond Hannon, Corporation Counsel* (*John Preston Phillips* of counsel), for respondent. I. The construction placed by the courts below upon the building zone ordinance is correct and is not unconstitutional. (*Matter of Monument Garage Corp.* v. *Levy,* 266 N. Y. 339; *City of New York* v. *Off-Streets Parking,* 153 Misc. 150, 242 App. Div. 767; *Village of Great Neck Estates* v. *Bemak & Lehman,* 128 Misc. 441, 223 App. Div. 853, 248 N. Y. 651.) II. The building zone ordinance as construed by the courts below does not confiscate property rights and is not unconstitutional. (*Matter of Clark* v. *Board of Zoning Appeals of Town of Hempstead,* 301 N. Y. 86; *Nectow*

v. *Cambridge,* 277 U. S. 183; *People* v. *Miller,* 304 N. Y. 105; *Shepard* v. *Village of Skaneateles,* 300 N. Y. 115; *Matter of Fox Meadow Estates* v. *Culley,* 233 App. Div. 250, 261 N. Y. 506; *Matter of Wulfsohn* v. *Burden,* 241 N. Y. 288.)

FULD, J.   The present action was brought by the City of Yonkers to restrain and enjoin defendants, owners and lessees of a garage, from using residential land in asserted violation of a Building Zone Ordinance enacted by the city in 1928 (General Ordinance No. 11 — 1928).   The garage is located in a business district, on Lot 46 which faces Riverdale Avenue.   Immediately to the rear of Lot 46 is a vacant and unimproved parcel of land which extends to Livingston Avenue, a street that parallels Riverdale Avenue.   This latter parcel, Lot 20, is in a residential zone, and, indeed, has been in such a zone since 1920, when the city's first General Zoning Ordinance became effective (General Ordinance No. 4 — 1920).   Both lots, which have continuously been under the same ownership, were purchased in 1941 by defendants Edward and Henry Lampl.   In 1946, the entire premises were leased, and the lease was subsequently assigned to defendant Devonshire Lane Service, Inc., which in turn subleased a portion of the premises to defendant Rentways, Inc.

The violations enjoined concern the use of Lot 20, the plot in the residential zone.   In 1928, an additional structure of two stories, extending almost to the boundary of Lot 20, was added, on Lot 46, to the rear of the garage.   As that parcel is on an incline — Livingston Avenue being higher than Riverdale Avenue — the second floor of the new structure is on a level with Lot 20, and doors were constructed at the rear of that second floor to admit vehicles from Livingston Ave.   In other words, defendants have used the unimproved residential lot, facing Livingston Avenue, as a means of access to the garage, and trucks have gone in and out of the second floor of the garage over that lot.   In addition, defendants have utilized it for the parking of vehicles and for the installation of underground gasoline tanks.

Upon the trial, defendants contended that they were entitled to a nonconforming use; they claimed that there had not been a violation, since they had used Lot 20 as a means of ingress and egress for some time prior to 1928, the effective date of an

ordinance which approved pre-existing nonconforming uses (General Ordinance No. 11, § 11). The referee, who tried the case, found, however, that such use did not commence until 1929. In view of that finding — affirmed by the Appellate Division — defendants upon their appeal have added, as objections, (1) that the city is not empowered by any statute to prohibit an owner from using a vacant lot, owned by him in a residential district, as a means of access to a business structure constructed on his adjoining lot, and (2), if the city were so empowered, application of its ordinance to the present case would constitute a confiscation of defendants' property and a deprivation of due process.

The enabling statute, section 20, subdivision 25, of the General City Law, authorizes a city '' To regulate and restrict the location of trades and industries and the location of buildings, designed for specified uses, and for said purposes to divide the city into districts and to prescribe for each such district the trades and industries that shall be excluded ''. Manifestly, that statute authorizes the City of Yonkers to prohibit the location of a garage or any part of one on the vacant residential land, and defendants concede that the judgment, insofar as it orders the removal of underground gasoline tanks from Lot 20 and prohibits the parking of vehicles thereon is fully justified. They argue, however, that the use of their land in a residential district as a mere means of ingress to, and egress from, business property may not be deemed the conduct of a '' trade '' or '' industry '' and, for that reason, is beyond the regulation of the city.

The power to regulate '' trades and industries '' obviously includes the power to regulate any part or portion of a trade or industry. And it can hardly be denied that the day in, day out moving of vehicles across private land from a public street to the shelter of a garage building is part of the business of garaging vehicles. Of necessity, then, the use of Lot 20 as an integral and essential part of the business conducted on Lot 46 may be enjoined as nonresidential. Such would be our conclusion even apart from authority — though, we note, support is found in cases that have considered the application of zoning ordinances to vacant residential land used as an

adjunct to business property. (See *Village of Great Neck Estates* v. *Bemak & Lehman,* 248 N. Y. 651, affg. 223 App. Div. 853; *Town of Brookline* v. *Co-Ray Realty Co.,* 326 Mass. 206, 212.) In the *Bemak* case (*supra,* 248 N. Y. 651), the owner of a garage located outside of a village permitted his customers to drive into and out of his garage over a driveway located in a residential area within the village. The Appellate Division's grant of an injunction prohibiting the use of the driveway for this purpose was upheld by this court, upon the ground that the use of land, within a residence zone, as an approach to a garage constituted a business use. And in the Massachusetts case, *Town of Brookline* v. *Co-Ray Realty Co.* (*supra,* 326 Mass. 206), the question was whether the use of vacant land, situated in a so-called "single residence district," as a rear entrance to an apartment house, located on an adjacent lot in an unrestricted zone, violated an ordinance prohibiting apartment buildings in the more highly restricted residence zone. The court held that the use of such land as a rear yard and service entrance for the apartment house or as "a locus for carrying on the numerous inevitable service activities" of such apartment house, was conduct forbidden within the single residence zone (pp. 211, 212).

Nor does the ordinance under consideration confiscate defendants' property or otherwise offend against constitutional guarantees. The second floor of the garage was constructed in 1928, eight years after the enactment of the zoning ordinance that placed Lot 20 in a residence zone. If that second floor could not be profitably used, or used at all, for garaging purposes, because of the then existing prohibition upon the use of the adjoining plot, the owner knew or should have known it. The fact that he nevertheless built that floor as an addition to his garage and thereafter utilized Lot 20 in violation of the ordinance does not entitle him to assert a vested right and complain — when the municipality proceeds against him — that enforcement of the ordinance, relating to Lot 20, renders his improvement useless. (Cf. *Matter of 440 E. 102nd St. Corp.* v. *Murdock,* 285 N. Y. 298, 305; *Matter of Rosenbush* v. *Keller,* 271 N. Y. 282, affg. 247 App. Div. 748.) And the situation is not affected, defendants' case is not aided, by the fact that a city employee had issued a building

permit for the new structure with rear doors opening on Lot 20 or by the further fact that the city had failed to object for many years to the use to which that lot had been put. A municipality, it is settled, is not estopped from enforcing its zoning laws either by the issuance of a building permit or by laches. (See *Rollins* v. *Armstrong*, 251 N. Y. 349, affg. 226 App. Div. 687; *Village of North Pelham* v. *Ohliger*, 245 N. Y. 593, affg. 216 App. Div. 728.) Indeed, quite apart from that, defendants, though they have attacked the ordinance as confiscatory, have completely failed to establish or present proof that there has been any confiscation in fact. (See *Arverne Bay Constr. Co.* v. *Thatcher*, 278 N. Y. 222, 232.) Completely absent is any showing that the second floor's present use could not be continued by building a passageway or ramp within or alongside of the structure so as to permit access to that floor from Riverdale Avenue or, if such construction were impossible, that such floor could not be converted to some other profitable use.

The judgment should be affirmed, with costs.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DESMOND, DYE and FROESSEL, JJ., concur.

Judgment affirmed.